UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL K. OWUSU,
a.k.a., Nathaniel Porter,

      Plaintiff,                  CIVIL ACTION NO. 16-cv-12490

    v.                              DISTRICT JUDGE JUDITH E. LEVY

MICHIGAN DEPARTMENT OF      MAGISTRATE JUDGE MONA K. MAJZOUB
CORRECTIONS PAIN
MANAGEMENT COMMITTEE, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Nathaniel K. Owusu, a state inmate in the custody of the Michigan Department of Corrections (MDOC), proceeding *pro se*, filed this prisoner civil rights action against Defendants Michigan Department of Corrections Pain Management Committee (PMC), Corizon Health, Inc., Gary R. Kerstein, William C. Borgerding, Keith Papendick, M.D., Craig Hutchinson, M.D., Timothy Kangas, Teri Byrne, Corey Grahn, N.P., Bryan D. Buller, M.D., Teresa Merling, Michael A. Millette, Susan N. Wilson, N.P., Danielle M. Paquette, P.A., Michael Brown, Heather Haapala, Oliver L. Johnston, and Connie D. Lester on June 30, 2016, pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights. (Docket no. 1.)[1] Generally, Plaintiff alleges that while he was incarcerated at the Michigan Reformatory (RMI) in Ionia, Michigan, the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, and the Lakeland Correctional Facility (LCF) in Coldwater,

---

[1] Plaintiff's claims against Defendants Kangas, Haapala, and Lester have since been severed from this matter and dismissed without prejudice. (*See* docket no. 121 at 15.)

Michigan from 2011 to 2016, Defendants denied him adequate medical treatment for his pain and liver disease. (*See id.*)

This matter currently comes before the court on two motions filed by Defendants PMC, Kerstein, Borgerding, Byrne, Merling, and Brown (hereinafter referred to as "the MDOC Defendants"): (1) a Motion for Summary Judgment (in favor of Defendants Brown and Merling) on the Basis of Exhaustion Only (docket no. 125); and (2) a Motion for Enlargement of Time in Which to Comply With Court's Scheduling Order (docket no. 142).[2] Plaintiff filed a Response to the MDOC Defendants' Motion for Summary Judgment. (Docket no. 127.) This action has been referred to the undersigned for all pretrial purposes. (Docket no. 8.) The undersigned has reviewed the pleadings, dispenses with oral argument on the Motions pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons that follow, it is recommended that the MDOC Defendants' Motion for Summary Judgment (docket no. 125) be **DENIED** and that the MDOC Defendants' Motion for Enlargement of Time in Which to Comply with Court's Scheduling Order (docket no. 142) be **GRANTED** as provided herein.

## II.    REPORT

### A.    Background

Plaintiff's 170-page, 855-paragraph Complaint consists of thirteen claims against eighteen defendants; only Plaintiff's claims against Defendants Brown and Merling are relevant

---

[2] The other motions pending in this matter, *i.e.*, Plaintiff's Motion to Enforce Court's Order (docket no. 132), Plaintiff's Motion to Enforce Subpoena on Non-Party (docket no. 140), Plaintiff's Motion to Compel Discovery from Corizon Defendants (docket no. 150), and the Corizon Defendants' Motion for Summary Judgment (docket no. 155) will be addressed at a later date.

to the instant Motion for Summary Judgment. Plaintiff alleges that Defendant Brown was deliberately indifferent to Plaintiff's medical needs when he denied Plaintiff's February 11, 2015 request for an ace bandage wrap to support an injury to his left wrist and thumb. (Docket no. 1 ¶¶ 248, 264-65.) According to Plaintiff, Defendant Brown stated that "Ace wraps are not given for long-term use." (*Id*. ¶ 248.) Plaintiff alleges that he filed Grievance #15-03-0598-12E3 against Defendant Brown for refusing to prescribe an ace bandage wrap and that he exhausted that grievance through Step III of the grievance process. (*Id*. ¶¶ 249, 267; docket no. 127 at 5.)

Plaintiff's claim against Defendant Merling arises from her treatment of Plaintiff following a fall that Plaintiff sustained upon returning to the correctional facility on September 21, 2015 after an off-site medical visit. (Docket no. ¶¶ 337-40.) Plaintiff explains that as he was walking through the front door of the facility, his right hip and leg gave way and he collapsed, hitting his head on the door frame as he fell to the floor. (*Id*. ¶¶ 338, 340.) He asserts that he was suffering from sharp pain in his pelvis, SI joint, and lumbosacral spine, and that he was unable to get up, so he lay on the floor writhing in pain and urinated on himself. (*Id*. ¶¶ 339-40.) Defendants Merling and Paquette allegedly responded to the incident and ordered Plaintiff to get up, and when he did not, they "roughly and violently lifted [P]laintiff from the floor and forced him into a wheelchair" in total disregard of Plaintiff's pain or the fact that he had urinated on himself. (*Id*. ¶¶ 345-46, 367.) Plaintiff claims that by refusing to stabilize Plaintiff with a backboard as is required by emergency protocol and instead forcing Plaintiff into a wheelchair, Defendants Merling and Paquette were deliberately indifferent to the possibility of causing Plaintiff further injury or permanent paralysis. (*Id*. ¶¶ 345, 367.) Plaintiff alleges that he filed Grievance #15-3315-12E3 and #15-3047-28E regarding this incident. (*Id*. ¶ 357.) Plaintiff seeks

3

declaratory and injunctive relief as well as compensatory and punitive damages. (Docket no. 1-1 at 54-56.)

### B. MDOC Defendants' Motion for Summary Judgment

#### 1. *Governing Law*

The MDOC Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 125.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

  2. Analysis

The MDOC Defendants argue that Defendants Brown and Merling are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies against them under the Prison Litigation Reform Act. (Docket no. 125.) The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 regarding prisoner grievances[3] requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). A grievance must include information regarding the facts of the issue being grieved (i.e., who, what when, where, why, how), and the dates, times, places, and names of the individuals involved.

---

[3] The MDOC Defendants attached a copy of MDOC Policy Directive 03.02.130 to their Motion. (Docket no. 125-2.)

MDOC Policy Directive 03.02.130(R). If the prisoner is dissatisfied with the Step I response, he may file an appeal, referred to as a Step II grievance, "within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due." MDOC Policy Directive 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with the policy. MDOC Policy Directive 03.02.130(B).

It is not the prisoner's burden to plead or prove that he has successfully exhausted his administrative remedies in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, failure to exhaust administrative remedies is an affirmative defense, *Jones*, 549 U.S. at 216, and so Defendants carry the burden of proof on the issue, *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455-56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). In such cases, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

a. <u>Defendant Brown</u>

The MDOC Defendants argue that Plaintiff has not exhausted his administrative remedies against Defendant Brown because he did not pursue any grievances against Defendant Brown through Step III of the grievance process. (Docket no. 125 at 15-17.) In support of this argument, the MDOC Defendants submitted a certified copy of Plaintiff's Step III Grievance Report, which identifies all grievances that Plaintiff pursued through Step III of the grievance process between May 2009 and September 28, 2017. (Docket no. 125-3.) They also submitted the underlying documentation for the grievances on the Report that are related to Plaintiff's health care and relevant to the time period in the instant matter. (Docket no. 125 at 7-9; docket no. 125-3.) As Defendants point out, the grievance that Plaintiff allegedly filed against Defendant Brown, Grievance #15-03-0598-12E3, is not listed on the Step III Grievance Report. (*See* docket no. 125 at 15; docket no. 127 at 5; docket no. 125-3.) Also, Defendant Brown is not named at Step I of any of the healthcare-related grievances that Plaintiff filed during the relevant time period and exhausted through Step III of the grievance process. (*See* docket no. 125 at 15; docket no. 125-3.) Accordingly, the MDOC Defendants have carried their initial summary judgment burden of demonstrating that Plaintiff failed to exhaust his administrative remedies against Defendant Brown.

In response to the instant Motion, Plaintiff contends that he did exhaust Grievance #15-03-0598-12E3 against Defendant Brown through Step III of the grievance process, by submitting a Step III appeal through the correctional facility's mail system within ten business days of receipt of the Step II response, in accordance with MDOC policy. (Docket no. 127 at 4-6, 9, 13-

16.) Plaintiff has submitted an unsworn declaration under the penalty of perjury in support of this contention. (Docket no. 127 at 20-23.) Specifically, Plaintiff declares that the Step II response for Grievance #15-03-0598-12E3 was returned to him on April 16, 2015, but he didn't receive it until after it was processed through the Bureau of Health Care Services mail system, on or about April 21, 2015. (*Id*. at 21.) Plaintiff also declares that within ten business days of receiving the response, on or about May 4, 2015, he submitted his Step III appeal via the correctional facility's mail system to the Director's Office, Grievance Section, in Lansing, Michigan. (*Id*.) Plaintiff further declares that he never received a response to his Step III appeal. (*Id*.) Additionally, Plaintiff has submitted a copy of the appeal form for Grievance #15-03-0598-12E3, on which the Step III appeal section has been completed. (*Id*. at 27.) Plaintiff concedes that Grievance #15-03-0598-12E3 is not listed on the Step III Grievance Report, but he argues that this is because the MDOC Step III Grievance Section respondent either failed to document receipt of Plaintiff's Step III appeal or never received Plaintiff's Step III appeal. (*Id*. at 14-15.)

Where, as here, the MDOC Defendants have met their initial summary judgment burden of demonstrating that Plaintiff failed to appeal his grievance against Defendant Brown to Step III of the grievance process, Plaintiff was required to produce "affirmative contrary evidence establishing the existence of a material question of fact on the exhaustion issue," that is, "some proper evidence that [he] had, in fact, filed and appealed the relevant grievances through all three steps of the Policy's grievance process." *August v. Caruso*, No. 12-13775, 2013 WL 5291577, at *5 (E.D. Mich. Sept. 19, 2013), *report and recommendation adopted*, No. 2:12-cv-13775, 2013 WL 6816472 (E.D. Mich. Dec. 24, 2013) (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (party opposing a motion for summary judgment "may not rely on the hope that the trier of fact

8

will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion.") (citation and internal quotation marks omitted)). Plaintiff's unsworn declaration made under the penalty of perjury and the completed Step III appeal form are sufficient to meet this burden.[4]  *See Lowe v. Prison Health Serv.*, No. 13-10058, 2014 WL 4605285, at *2 (E.D. Mich. Sept. 15, 2014) (completed grievance appeal form and affidavit created a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies).  *See also Hembree v. Carter,* No. 12-cv-13036, 2013 WL 3946062, at *4 (E.D. Mich. July 31, 2013) (finding grievance unexhausted where the grievance was not listed in the Step III grievance report and plaintiff did not provide an affidavit supporting his assertion that he filed a Step III appeal or any corroborating evidence, such as a copy of the grievance or evidence of mailing the grievance).  Accordingly, the MDOC Defendants' Motion for Summary Judgment should be denied with regard to Defendant Brown.

      b.  <u>Defendant Merling</u>

The MDOC Defendants assert that Plaintiff failed to exhaust his administrative remedies against Defendant Merling because the only grievance that Plaintiff pursued against her through Step III of the grievance process, Grievance #15-09-3315-12E3, was not reviewed on the merits but was rejected at Step III as untimely filed.  (Docket no. 125 at 16.)  Indeed, the MDOC rejected Plaintiff's Step III appeal of Grievance #15-09-3315-12E3 as untimely on the basis that it was supposed to be received by November 19, 2015, but it was not received until December 1, 2015.  (Docket no. 125-3 at 43.)  In response, Plaintiff argues that his Step III appeal of Grievance #15-09-3315-12E3 was improperly rejected as untimely because the Step III respondent miscalculated the November 19, 2015 deadline and failed to account for Plaintiff's

---

[4] Pursuant to 28 U.S.C. § 1746, an unsworn declaration made under the penalty of perjury is admissible in federal court with the same force and effect as an affidavit.

intervening transfer, which delayed his submission of the Step III appeal. (Docket no. 127 at 6-8, 9-10, 16-19.)

The MDOC's grievance policy provides that to properly file a Step III grievance, "the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . , to the Grievance and Appeals Section within ten business days after receiving the Step II response." MDOC Policy Directive 03.02.130(FF). The policy also provides that a grievance may be rejected if it is filed in an untimely manner. MDOC Policy Directive 03.02.130(G). A grievance will not be rejected as untimely, however, "if there is a valid reason for the delay; e.g., transfer." MDOC Policy Directive 03.02.130(G).

Plaintiff argues that the MDOC's policy requires a grievant to *send* the completed Step III appeal to the Grievance and Appeals Section within ten business days of *receiving* the Step II response. (Docket no. 127 at 17.) Here, the Grievance Appeal form indicates that the Step II response was returned to Plaintiff on November 4, 2015, but Plaintiff asserts that he did not actually *receive* the Step II response through the facility's mail system until November 6, 2015 or November 9, 2015. (Docket no. 125-3 at 44; docket no. 127 at 6, 17.) Plaintiff asserts that he "more likely than not" received the Step II response on November 9, 2015, so the deadline for submitting his Step III appeal was November 23, 2015. (Docket no. 127 at 7, 17.)

Plaintiff also claims that before he could file his Step III appeal, his property (including the grievance materials and forms relevant to this matter) was packed up and sealed on November 16, 2015 in preparation for his November 17, 2015 transfer from URF to LCF, and his property was not returned to him until the evening of November 18, 2015.[5] (*Id.* at 7.) Plaintiff asserts that he completed his Step III appeal of Grievance #15-09-3315-12E3 over the

---

[5] Plaintiff submitted a copy of the MDOC "Security Classification Screen - Review" conducted with regard to Plaintiff on November 16, 2015 in advance of and for the purpose of his transfer from URF to LCF with his Response to the MDOC Defendants' Motion for Summary Judgment. (Docket no. 127 at 29.)

10

weekend of November 20-22, 2015, and he placed it in the mail on the submission deadline of November 23, 2015. (*Id.*) Plaintiff contends that the time lapse between the date that he filed his Step III appeal and the date that it was received by the MDOC, December 1, 2015, "is well within the normal lapses of time that occur when grievance complaints are sent and received via the U.S. Mail." (*Id.* at 17-18.)

Regardless of whether the November 19, 2015 deadline was properly calculated, and even if Plaintiff's Step III appeal was untimely on that basis, the Step III response does not indicate that the MDOC considered Plaintiff's intervening transfer from URF to LCF in its decision to reject the Step III appeal as untimely. (*See* docket no. 125-3 at 43.) Plaintiff alleges that the transfer did indeed delay his filing of the Step III appeal, and he has provided corroborating evidence of the transfer. Under MDOC policy, Plaintiff's transfer may have provided a valid reason for the delay, had it been considered. MDOC Policy Directive 03.02.130(G); *see also Hodges v. Corizon*, No. 14-11837, 2015 WL 1511153, at *8 (E.D. Mich. Mar. 30, 2015) (even if grievance was untimely, fact that plaintiff had been transferred could have provided a valid explanation for any delay in filing the grievance); *Coleman v. Gullet*, No. 12-10099, 2013 WL 2634851, at *11 (E.D. Mich. June 10, 2013) (grievance appeal should not have been rejected as untimely because plaintiff's transfer was a valid reason for the delay in appealing the grievance). Accordingly, the Court cannot conclude that Plaintiff failed to properly exhaust his administrative remedies against Defendant Merling. The MDOC Defendants' Motion for Summary Judgment should be denied.

### C. MDOC Defendants' Motion for an Enlargement of Time

On August 21, 2018, the MDOC Defendants filed a Motion for Enlargement of Time in Which to Comply with the Court's Scheduling Order, seeking an extension of the discovery and

dispositive motion deadlines following a ruling on their pending Motion for Summary Judgment. (Docket no. 142.)  Federal Rule of Civil Procedure 6(b)(1)(A) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made, before the original time . . . expires."  Here, the MDOC Defendants filed the instant Motion for an Enlargement of Time before the discovery and dispositive motion deadlines passed.  (*See* docket no. 122.)  Moreover, a ruling on the MDOC Defendants' instant Motion for Summary Judgment is potentially dispositive of Plaintiff's claims against Defendants Brown and Merling, and it would likely affect the content of any motion for summary judgment on the merits of Plaintiff's claims filed by the MDOC Defendants.  Under these circumstances, good cause exists for a relatively brief and limited extension of the discovery and dispositive motion deadlines set forth in the court's Scheduling Order to account for the results of the court's ruling on the instant Motion for Summary Judgment.

Accordingly, the undersigned recommends that the MDOC Defendants' Motion for an Enlargement of Time be granted as follows:  (1) if Plaintiff's claims against Defendant Brown and/or Defendant Merling survive the instant Motion for Summary Judgment, the MDOC Defendants should be granted an additional thirty (30) days from the date of the court's ruling within which to conduct any additional discovery regarding Plaintiff's claims against Defendants Merling and/or Brown and to file a dispositive motion; and (2) if summary judgment is entered in favor of Defendants Brown and Merling, the MDOC Defendants should be required to file any dispositive motion regarding Plaintiff's claims against the remaining MDOC Defendants within seven (7) days of the court's ruling.

**D.  Conclusion**

For the reasons stated herein, it is recommended that the court **DENY** the MDOC Defendants' Motion for Summary Judgment (docket no. 125) and **GRANT** the MDOC Defendants' Motion for Enlargement of Time in Which to Comply with Court's Scheduling Order (docket no. 142) as provided above.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  October 23, 2018		s/ Mona K. Majzoub
					MONA K. MAJZOUB
					UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  October 23, 2018		s/ Leanne Hosking
					Case Manager

14